**KLESTADT WINTERS JURELLER
  SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens
Stephanie R. Sweeney

*General Counsel to Gregory M. Messer, Chapter 7
  Trustee of the Estate of Jeffrey Winick*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
In re                                                      :
                                                           :    Chapter 7
JEFFREY WINICK,                                            :
                                                           :    Case No. 20-11976 (SHL)
                                    Debtor.                :
---------------------------------------------------------x

**TRUSTEE'S APPLICATION FOR AN ORDER, PURSUANT TO FED. R. BANKR. P. 2004, AUTHORIZING THE TRUSTEE TO EXAMINE DAVID BERLEY, SDSDR111 LLC, SDS INVESTMENTS, LLC, SDS INVESTMENTS II LLC, DONAJEM HOLDINGS, LLC, VICTOR A. DUVA, S. LAWRENCE DAVIS, RICARDO BEAUSOLEIL, AND JOSEPH K. WINRICH IN CONNECTION WITH THE <u>DEBTOR'S TRANSFER OF AN INTEREST IN SDSDR111 LLC</u>**

**TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:**

Gregory M. Messer, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Jeffrey Winick, the above-captioned debtor (the "Debtor"), by and through his counsel, Klestadt Winters Jureller Southard & Stevens, LLP, as and for his application (the "Application") for entry of an order, pursuant to Fed. R. Bankr. P. 2004, authorizing him and to the extent it wishes to participate, the Internal Revenue Service (the "IRS"), to examine David Berley ("Berley"), SDSDR111 LLC ("SDSDR"), SDS Investments, LLC ("SDS"), SDS Investments II LLC ("SDS II"), Donajem Holdings, LLC ("Donajem"), Victor A. Duva ("Duva"), S. Lawrence Davis

("Davis"), Ricardo Beausoleil ("Beausoleil") and Joseph K. Winrich ("Winrich") (each an "Examinee," collectively, the "Examinees"), in connection with the Debtor's ownership and transfer of an interest in SDSDR, respectfully represents and sets forth as follows:

## PRELIMINARY STATEMENT

In or around 2006, SDSDR was formed under the laws of the State of Delaware in order to acquire and hold a certain commercial condominium at 545 West 111th Street (the "Property"). From inception until in or around July 24, 2020, the Debtor was the owner of a 24 to 25% membership interest in SDSDR (the "SDSDR Interest"). In or around January 30, 2015, the Debtor granted Berley an interest in the SDSDR Interest as collateral for a loan in the original principal amount of $500,000 (the "Loan"). At the time that the Debtor granted Berley a collateral interest in the SDSR Interest, the Debtor had accrued unpaid tax obligations to the IRS for tax years 2012, 2013 and 2014 in the total amount of over $5.5 million, and the IRS had already filed a public notice of tax lien for the 2012 year in the amount of $2,381,065.14. On July 24, 2020, just thirty-four (34) days before filing his bankruptcy petition, the Debtor transferred the SDSDR Interest to Berley "in full satisfaction of the obligations secured [by the SDSDR Interest]" in the stated principal amount of $1,658,693.70.

These transactions raise serious questions that the Trustee needs answers to including, but not limited to:

(i) Whether the SDSDR Interest was transferred to Berley as collateral in 2015 or nominally in 2020 free of any preexisting lien of the IRS;

(ii) Whether the amount of the Debtor's obligations to Berley as stated in the 2020 transfer documents is correctly calculated;

(iii) What the value of the SDSDR Interest is, or was at all relevant times, and whether

2

the transfer to Berley in 2020 "in full satisfaction" of the Loan was reasonable and appropriate; and

(iv) Whether the Trustee can seek the avoidance of the grant of an interest in the SDSDR Interest to Berley in 2015 when the Debtor had at least $4 million in accrued, unpaid tax obligations to the IRS, or alternatively seek the avoidance of the transfer "in full satisfaction" of the Debtor's obligations to Berley in 2020.

The Trustee believes that each of the Examinees has discoverable documents and/or information with respect to the foregoing issues for the reasons set forth in the chart annexed hereto as Exhibit A. Accordingly, the Trustee respectfully requests that the Court enter an order in substantially the same form as that annexed hereto as Exhibit B (the "Proposed Order"), authorizing the Trustee to serve a subpoena *duces tecum* (each a "Subpoena," collectively, the "Subpoenas") upon each of the Examinees. The Proposed Order further authorizes the IRS to participate in any examination through the United States Attorney.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this application pursuant to 28 U.S.C. §§ 157 and 1334, and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York (Preska, C.J.), dated January 31, 2012.

2. Venue of this proceeding and this application is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicate for the relief requested herein is Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Rule 45 of the Federal Rules of Civil Procedure (the "Federal Rules").

## INTRODUCTION

4. On August 27, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code before this Court.

5. On or around the Petition Date, Gregory M. Messer was appointed interim trustee of the Debtor's estate. On October 8, 2020, the Trustee presided over the initial meeting of creditors in the Debtor's case held pursuant to section 341(a) of the Bankruptcy Code and became the permanent trustee herein by operation of section 702(d) of the Bankruptcy Code.

## RELEVANT BACKGROUND

6. On or around June 14, 2006, SDSDR was formed as a limited liability company existing under the laws of the state of Delaware and registered as a foreign entity in the state of New York for the purpose of acquiring and holding the Property.

7. On or around June 29, 2006, the Debtor, SDS and Winrich entered into an Amended[1] and Restated Limited Liability Company Operating Agreement dated as of June 29, 2006 (the "Operating Agreement"), pursuant to which SDSDR was owned 25% by the Debtor and 75% by SDS, and Winrich would serve as the independent manager of SDSDR and the Property.

8. Also on June 29, 2006, a deed was executed transferring the Property from 545 West Company to SDSDR for stated consideration of $15,655,555. The acquisition of the Property was funded in part by a loan from Wachovia Bank, N.A., n/k/a Wells Fargo.

9. For the annual tax periods ending December 31, 2012, 2013 and 2014, the Debtor amassed significant income tax obligations to the IRS, which remain outstanding today as follows:

| Tax Period Ending | Date Tax Assessed | Tax Due | Penalty to the Petition Date | Interest to the Petition Date | Total Obligation |
|---|---|---|---|---|---|
| 12/31/2012 | 11/18/2013 | $356,509.00 | $627,999.45 | $436,044.74 | $1,420,553.19 |
| 12/31/2013 | 11/24/2014 | $1,386,429.00 | $416,699.65 | $413,433.23 | $2,216,561.88 |
| 12/31/2014 | 09/28/2015 | $1,824,015.00 | $548,181.72 | $473,941.12 | $2,846,137.84 |
| | TOTALS: | $3,566,953.00 | $1,592,880.82 | $1,323,419.09 | $6,483,252.91 |

---

[1] Although it is labeled "Amended", this appears to be the original operating agreement for SDSDR.

See IRS Proof of Claim, dated Nov. 6, 2020, Claim No. 2-1.

10. On May 19, 2014, the IRS filed a Notice of Federal Tax Lien against the Debtor with respect to the 2012 tax year in New York County asserting an unpaid balance of assessment in the amount of $2,381,065.14. The notice was filed publicly and has at all times been available for free via the internet on New York City's ACRIS system among other places.

11. On or around December 19, 2014, Winick, SDS and Duva[2] executed an amendment to the Operating Agreement[3] pursuant to which Winick was permitted to pledge the SDSDR Interest as follows:

> [The Debtor] may pledge and grant security interests in all or any portion of [the SDSDR Interest] to secure any indebtedness of [the Debtor] or any Winick Entity in an aggregate original principal amount not to exceed $2.5 million, without consent of the Managing Member or SDS Investments. Upon declaration of an event of default by the secured party to which any [SDSDR Interest] ha[s] been pledged and exercise by such secured party of its right to foreclose on such [SDSDR Interest], notwithstanding any other provision of this Agreement, including Sections 9.03 and 9.07, the transferee of such [SDSDR Interest] shall be automatically admitted to the Company as a Member and shall automatically succeed to the foreclosed [SDSDR Interest], and if all of [the Debtor]'s [SDSDR Interest] were foreclosed, [the Debtor] shall immediately thereafter cease to be a Member, without the necessity of compliance with any other procedure.

12. On or around January 29, 2015, the Debtor issued a secured promissory note to Berley evidencing an indebtedness of $500,000, with interest at 6% per annum or 10% in the event of a default, with an original outside maturity date of November 30, 2015, which was later extended to an outside date of January 4, 2021[4] (as extended, amended and restated, and otherwise

---

[2] From the document, it appears that at some point between 2006 and 2014, Duva replaced Winrich as the independent manager of SDSDR.

[3] This amendment references an amended operating agreement dated June 29, 2009. It is unclear if this is a typographical error and is intended to reference the June 29, 2006 Operating Agreement or if there was a prior amendment to which the Trustee is unaware.

[4] The maturity date of the Note was extended pursuant to various Modification and Extension Agreements and, ultimately, pursuant to the Second Amended and Restated Secured Promissory Note, dated November 1, 2019, to "the earlier to occur of (x) January 4, 2021, (y) the date the Borrower receives his pro rata share of the proceeds from the sale of the Property…and (z) the date Borrower receives his pro rata share of the proceeds from the sale of Winick Realty…."

5

modified from time to time, the "Note"). The Note provided the SDSDR Interest as collateral for the Loan.

13. On or around January 30, 2015 Berley filed a financing statement under the UCC with the New York State Department of State evidencing a security interest in the SDSDR Interest.

14. On August 13, 2015, the IRS filed a Notice of Federal Tax Lien against the Debtor with respect to the 2013 tax year in New York County asserting an unpaid balance of assessment in the amount of $1,491,313.31. The notice was filed publicly and has at all times been available for free via the internet on New York City's ACRIS system among other places.

15. On October 20, 2015, the IRS filed a Notice of Federal Tax Lien against the Debtor with respect to the 2014 tax year in New York County asserting an unpaid balance of assessment in the amount of $1,935,993.37. The notice was filed publicly and has at all times been available for free via the internet on New York City's ACRIS system among other places.

16. On or about August 3, 2016, after the IRS had filed notices of federal tax liens for the 2012, 2013 and 2014 years totaling $5,808,374, the Note was amended and restated in the increased principal amount from $500,000 to $1,500,000.

17. In or around August 2016, the Operating Agreement was further amended to reflect the replacement of SDS with SDS II, and the recasting of SDSDR's equity as follows: 24% the Debtor; 75% SDS II; and 1% Davis. It is unknown whether the Debtor received anything for the transfer of 1% of his interest in SDSDR to Davis.

18. On November 27, 2018, the IRS filed a Notice of Federal Tax Lien against the Debtor with respect to the 2015 and 2016 tax years in New York County asserting an unpaid balance of assessment in the amount of $1,530,976.76. The notice was filed publicly and has at

6

all times been available for free via the internet on New York City's ACRIS system among other places.

19. On December 4, 2018, Louis Eisinger, Chief Operating Office of Winick Realty Group LLC, sent an email to Berley requesting his consent to amend the Operating Agreement pursuant to the terms of the Note because SDSRI is "working on a refinance and part of the refinance requires that the operating agreement is modified for this particular loan." Berley gave his consent. On or around December 10, 2018, the Operating Agreement was amended again to, among other things, replace Duva with Beausoleil as the independent manager of SDSDR. Another amendment to the Operating Agreement was made and approved by Berley in October 2019.

20. On or about November 1, 2019, the Note was again amended and restated in the increased amount of $1,627,500, adding to the outstanding principal balance of the first amended Note accrued and unpaid interest and legal fees.

21. A review of the Debtor's bank statements from January 1, 2017 forward revealed that the Debtor made payments to Berley in the total amount of $557,091.02 for the three-year period of February 3, 2017 to March 3, 2020.

22. By letter dated July 9, 2020, Berley notified the Debtor of an Event of Default under the Note for failure to pay quarterly interest as of May 1, 2020 and demanded payment of all amounts due under the Note.

23. On July 24, 2020, 34 days before the Petition Date, the Debtor executed a letter pursuant to which he surrendered and transferred the SDSDR Interest to Berley in "full satisfaction" of his obligations to Berley. The letter stated that the then-obligations to Berley under

7

the Note, as amended, totaled $1,658,693.70, representing principal of $1,627,500.00 plus interest through July 9, 2020 of $24,412.50 plus default interest of $6,781.20.

24. On the Petition Date, the Debtor filed his statement of financial affairs stating that the SDSDR Interest was "attached, seized, or levied" within the year prior to the Petition Date by Berley and that the value of the SDSDR Interest was $1,500,000.

## **RELIEF REQUESTED**

25. By the Application, the Trustee seeks authority to seek discovery from the Examinees related to SDSDR, the SDSDR Interest, the relationship between the Debtor and Berley, and any other matters or issues regarding the interests of the Debtor, either directly or indirectly, in SDSDR. Specifically, the Trustee intends to seek production of the following documents from the various Examinees:

   a) Any communications with the Debtor, any entities owned in whole or in part by, controlled in whole or in part by, and/or affiliated with, the Debtor (each a "Debtor Entity"), or with any other Examinees, concerning Berley, the Note, SDSDR, the SDSDR Interest, the transfer of the SDSDR Interest, and the Debtor's obligations to the IRS;

   b) Any documents related to the Note or obligations thereunder including amendments, calculations of obligations due thereunder, accountings, records of payment, records of funding, invoices, or communications; and

   c) Any documents concerning the management and operations of SDSDR, including that certain amendment to its Operating Agreement to permit the Debtor to use the SDSDR Interest as collateral.

26. At this time, the Trustee intends to orally examine Berley under oath regarding

8

these issues and seeks the right to examine any other Examinees if required.

27. Bankruptcy Rule 2004(a) provides that "[o]n the motion of any party in interest, the court may order the examination of any entity." It is well established that the investigation envisioned by this rule is broad-based, relating to any and all matters affecting the administration of the debtor's estate, as well as the conduct, liabilities or property of the debtor.

28. Discovery under Rule 2004 is broader than that available under the Federal Rules of Civil Procedure. In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991). "As a general proposition, [Bankruptcy] Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citations omitted). As such, courts have acknowledged that "[Bankruptcy] Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions." Id. see also, In re Coffee Cupboard, Inc., 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991); In re Silverman, 36 B.R. 254, 258 (Bankr. S.D.N.Y. 1984).

29. The Rule 2004 examinations of the Examinees are necessary to determine whether the Debtor's estate has any claims in connection with the Debtor's transfer of the SDSDR Interest.

30. The Rule 2004 examinations of the Examinees sought herein are necessary for the Trustee to fulfill his duties under the Bankruptcy Code.

31. For all the foregoing reasons, the Trustee respectfully submits that he has demonstrated ample cause and a right to conduct the examinations contemplated herein.

**PROPOSED GENERAL PROCEDURE**

32. The Trustee proposes that the production of documents or electronic files be made at either (i) the offices of Trustee's counsel, Klestadt Winters Jureller Southard & Stevens, LLP,

9

200 West 41st Street, 17th Floor, New York, New York, 10036-7203; or (ii) through an electronic means such as Dropbox, Relativity, or other format as may be agreed upon by the Examinee and Trustee.

33. The Trustee proposes to serve all Subpoenas *duces tecum* at least fourteen (14) days prior to the due date for the production or inspection of any documents or electronic files.

## PROPOSED REMOTE DEPOSITION PROCEDURES

34. Pursuant to Federal Rule 30(b)(4), made applicable to adversary proceedings in bankruptcy pursuant to Bankruptcy Rule 7030, "… parties may stipulate – *or the court may on motion order* – that a deposition be taken by telephone or other remote means." Fed. R. Civ. P. 30(b)(4) (emphasis added). Further, Federal Rule 30(b)(3)(A) provides that deposition testimony may be recorded by "audio, audiovisual, or stenographic means." Fed. R. Civ. P. 30(b)(3)(A).

35. Additionally, courts in this district have determined that "…the requirements set forth in Fed. R. Civ. P. 30(b)(5), including the requirement that, unless the parties stipulate otherwise, the deposition be 'conducted before an officer appointed or designated under Rule 28,' and that the deponent be placed under oath by an officer … [are satisfied] … so long as [the] officer attends the deposition via the same remote means (e.g., telephone conference call or video conference) used to connect all other remote participants, and so long as all participants (including the officer) can clearly hear and be heard by all other participants." Sinceno v. Riverside Church in City of New York, No. 18-CV-2156 (LJL), 2020 WL 1302053, at *1 (S.D.N.Y. Mar. 18, 2020).

36. Given the ongoing health crisis, and pursuant to Federal Rule 30 and Sinceno, the Trustee proposes remote deposition procedures be implemented, to the extent depositions of the Examinees need to be taken remotely as set forth on Exhibit C (collectively, the "Remote Deposition Procedures").

10

**NOTICE**

37. Notice of the Application has been provided to the Office of the United States Trustee, the Debtor, the IRS and the Examinees. The Trustee submits that the foregoing notice constitutes due and proper notice of the Application pursuant to the Bankruptcy Rules. Applications for relief under Rule 2004(a) are routinely granted *ex-parte*. 9 *Collier on Bankruptcy* ¶ 2004.01[2] (15th ed. 2009), *citing* 1983 Advisory Committee Note to Fed. R. Bankr. P. 2004, *reprinted in* ch. 2004, App. 2004; In re Sutera, 141 B.R. 539, 540 (Bankr. D. Conn. 1992); In re Wilcher, 56 B.R. 428, 434 (Bankr. N.D.Ill. 1985); In re Silverman, 10 C.B.C.2d 1219, 36 B.R. 254 (Bankr. S.D.N.Y. 1984). Pursuant to the Honorable Sean H. Lane's Chambers' Rules, "[r]equest for Rule 2004 orders may be submitted to Chambers *ex parte* but the Court in its discretion may require notice and a hearing." As the Examinees will have ample opportunity to object and be heard at a hearing to be held with respect to the Application, the Trustee submits that due and proper notice has been provided, and no further notice should be required.

**NO PRIOR RELIEF**

38. Except as specifically stated, no previous application for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Trustee respectfully requests that this Court enter an order, substantially in the form of the Proposed Order, and for such other and further relief as the Court determines to be just and proper.

Dated: New York, New York
December 21, 2021

                    **KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

By: */s/ Fred Stevens*
Fred Stevens
Stephanie R. Sweeney
200 West 41st Street, 17th Floor
New York, New York 10036-7203
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: fstevens@klestadt.com
       ssweeney@klestadt.com

*General Counsel to Gregory M. Messer,
Chapter 7 Trustee of Jeffrey Winick*

## Exhibit A

## Proposed Examinees

| Examinee | Relationship(s) | Reason for Examination |
|---|---|---|
| David Berley | Lender to the Debtor; Transferee of SDSDR Interest | Has knowledge or information related to his relationship with the Debtor, Loan(s) to the Debtor, the SDSDR Interest, and circumstances of Loan(s) and transfer(s). |
| SDSDR111 LLC | Entity Debtor had and transferred an interest in | Has knowledge or information related to Debtor's investment/ownership of SDSDR including its value, transfer to Berley, and amendments to SDSDR's governance agreements to accommodate the Debtor's transfer of a collateral interest. |
| SDS Investments, LLC | Prior member of SDSDR | Same |
| SDS Investments II LLC | Became the managing member of SDSDR | Same |
| Donajem Holdings, LLC | Managing member of SDS, prior member of SDSDR | Same |
| Victor A. Duva | Member and/or successor independent manager for SDSDR | Same |
| S. Lawrence Davis | Signatory for Donajem/SDS/SDS II, and member of SDSDR | Same |
| Ricardo Beausoleil | Successor independent manager for SDSDR | Same |
| Joseph K. Winrich | Original independent manager of SDSDR | Same |

Exhibit A-1

# EXHIBIT B

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
In re                                                  :
                                                       :          Chapter 7
JEFFREY WINICK,                                        :
                                                       :          Case No. 20-11976 (SHL)
                            Debtor.                    :
-------------------------------------------------------x

**ORDER, PURSUANT TO FED. R. BANKR. P. 2004, AUTHORIZING THE TRUSTEE TO EXAMINE DAVID BERLEY, SDSDR111 LLC, SDS INVESTMENTS, LLC, SDS INVESTMENTS II LLC, DONAJEM HOLDINGS, LLC, VICTOR A. DUVA, S. LAWRENCE DAVIS, RICARDO BEAUSOLEIL, AND JOSEPH K. WINRICH IN CONNECTION WITH THE DEBTOR'S TRANSFER OF AN INTEREST IN SDSDR111 LLC**

Upon the application (the "Application") of Gregory M. Messer, Chapter 7 trustee (the "Trustee") of the estate of Jeffrey Winick, the above-captioned debtor (the "Debtor"), for entry of an order, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, authorizing him, as well as the Internal Revenue Service (the "IRS"), if it chooses to participate, to examine David Berley ("Berley"), SDSDR111 LLC ("SDSDR"), SDS Investments, LLC ("SDS"), SDS Investments II LLC ("SDS II"), Donajem Holdings, LLC ("Donajem"), Victor A. Duva ("Duva"), S. Lawrence Davis ("Davis"), Ricardo Beausoleil ("Beausoleil") and Joseph K. Winrich ("Winrich") (each an "Examinee," collectively, the "Examinees") in connection with the Debtor's ownership and transfer of an interest in SDSDR, as well as approving the Remote Deposition Procedures[1]; and the submission of the Application upon the notice set forth in the Application being proper and authorized under the Court's rules and procedures; and it appearing that no other

---
[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Application.

Exhibit B-1

or further notice is required; and after due deliberation and sufficient cause appearing therefore, it is

**ORDERED**, that the Application is granted to the extent provided herein; and it is further

**ORDERED**, that pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure, the Trustee, and the IRS, shall be, and hereby are, authorized to serve subpoena(s) *duces tecum* (each, a "Subpoena") upon each of the Examinees; and it is further

**ORDERED**, that each Examinee is directed to either timely comply with the terms of this Order and any Subpoena issued to them or make an appropriate motion for a protective order or to quash any Subpoena; and it is further

**ORDERED**, that unless otherwise ordered by this Court, no Subpoena shall seek the production or inspection of documents and things on less than fourteen (14) days' notice; and it is further

**ORDERED**, that for the reasons outlined in the Application, including the current and ongoing health crisis, the Remote Deposition Procedures are hereby approved, and the Trustee is authorized to implement the same in connection with any Remote Deposition; and it is further

**ORDERED**, that this Court shall retain jurisdiction with respect to any disputes that arise with respect to this Order, the Remote Deposition Procedures, or any Subpoena issued hereunder, unless this Court lacks jurisdiction over the witness because the Subpoena is issued from a Court other than this one.

Dated:   New York, New York
         January ___, 2022

                                      HONORABLE SEAN H. LANE
                                      UNITED STATES BANKRUPTCY JUDGE

Exhibit B-2

## EXHIBIT C

### Remote Deposition Procedures

i. To the extent necessary, an Examinee's deposition may be conducted remotely using videoconference technology and said Examinee shall be video-recorded during the same (each remote deposition, a "Remote Deposition").

ii. To the extent practicable, the Trustee will use either Enright, Veritext, Bee Reporting, or a similar vendor for court reporting services (the "Court Reporter"). When determining which vendor to use for court reporting services, the Trustee will consider said vendor's ability to provide video conference solutions for the Remote Deposition. To the extent an Examinee is unable to utilize said video-conferencing, the Trustee and said Examinee will confer in good faith to come up with an alternative platform for the Remote Deposition, including the use of telephone.

iii. Any video-recorded (or audio-recorded) Remote Deposition taken pursuant to these Remote Deposition Procedures may be used at a subsequent trial or hearing to the same extent that an in-person deposition may be used at a trial or hearing, and the parties involved in such Remote Deposition shall waive any objections to the use of said Remote Deposition on the basis that it was taken remotely. All other objections to the subsequent use of any testimony from a Remote Deposition are reserved.

iv. An Examinee, or, to the extent applicable, counsel for an Examinee, the Trustee, and the Court Reporter will each participate in the Remote Deposition remotely and separately. Each party attending a Remote Deposition shall be visible to all other participants (if using video-conferencing technology), and each will strive to ensure their environment is free from noise and distractions.

v. During the course of a Remote Deposition, no counsel shall initiate a private conference, including through text message, electronic mail, or the chat feature of the video conferencing system (if applicable), with any of the parties involved in said Remote Deposition while a question is pending, except for the purpose of determining whether a privilege should be asserted.

vi. Each Remote Deposition shall be recorded by stenographic means, but given the Health Crisis, the Court Reporter will not be physically present with the Examinee whose deposition is being taken. The parties involved in said Remote Deposition agree not to challenge the validity of any oath administered by the Court Reporter, even if the Court Reporter is not a notary public in the state where the applicable Examinee resides.

vii. The Court Reporter will stenographically record the testimony of an Examinee during said Remote Deposition, and the Court Reporter's transcript shall constitute the official record. If applicable, and pursuant to the paragraphs above, the Court Reporter will simultaneously videotape the Remote Deposition and preserve the video recording. To the extent necessary, the Court Reporter may be given a copy of the video recording and may review the video recording to improve the accuracy of any written transcript of said Remote Deposition.

Exhibit C-1

viii. The Court Reporter is an "Officer" as defined by Federal Rule 28(a)(2), made applicable to adversary proceedings in bankruptcy by Rule 7028, and shall be permitted to administer the oath to an Examinee via the video conferencing technology, or, if applicable, via the telephone line being used by the parties involved in the Remote Deposition. The Examinee will be required to provide government-issued identification satisfactory to the Court Reporter, and this identification must be legible on the video record, to the extent applicable. To the extent video-conferencing is not utilized at a Remote Deposition, and the Remote Deposition is conducted by telephone, the Court Reporter is authorized to use whatever its ordinary means of identifying a deponent via telephone would be.

ix. The Trustee, as the party noticing the Remote Depositions, will be responsible for procuring a written transcript and video record of each Remote Deposition. Each party involved in a Remote Deposition shall bear their own costs in obtaining a transcript and/or video record of the applicable Remote Deposition.

x. The Trustee will provide the Court Reporter with a copy of these Remote Deposition Procedures at least twenty-four (24) hours in advance of a scheduled Remote Deposition.

xi. At the beginning of each Remote Deposition, the Court Reporter shall begin said Remote Deposition with an on-the-record statement that includes: (i) the officer's name and company affiliation; (ii) the date, time, and place of the Remote Deposition; (iii) the Examinee's name; (iv) the officer's administration of the oath or affirmation to the Examinee; and (v) the identity of all persons present at the Remote Deposition.

xii. To the extent applicable, at the beginning of each segment of a Remote Deposition, the Court Reporter shall begin said segment of the Remote Deposition by reciting: (i) the officer's name and business address; (ii) the date, time, and place of the Remote Deposition; and (iii) the Examinee's name.

xiii. The Trustee and each Examinee will work collaboratively and in good faith with the Court Reporter to assess each Examinee's technological abilities and to troubleshoot any issues at least forty-eight (48) hours in advance of a Remote Deposition so any adjustments can be made. The Trustee and the Examinees, as applicable, will work collaboratively to address and troubleshoot technological issues that arise during a Remote Deposition and make such provisions as are reasonable under the circumstances to address such issues. This provision shall not be interpreted to compel any party to proceed with a Remote Deposition where said Examinee cannot hear or understand the other participants in the Remote Deposition or where the participants in the Remote Deposition cannot hear or understand an Examinee.

xiv. As applicable, each Examinee shall endeavor to have technology sufficient to appear for a videotaped deposition (e.g., a webcam and computer or telephone audio), as offered by whatever entity the Trustee selects to be the Court Reporter, and bandwidth sufficient to sustain the Remote Deposition. To the extent applicable, counsel for each Examinee shall consult with the Examinee prior to the remote deposition to ensure the Examinee has the required technology. If not, to the extent possible, counsel for the Examinee shall endeavor to supply the required

Exhibit C-2

       technology to the Examinee prior to a Remote Deposition. To the extent applicable, in the event the Trustee notices third-party witnesses, and to the extent necessary, the Trustee shall supply any necessary technology that said third-party witness does not have.

xv. The following methods, or a combination of the same, for administering exhibits may be employed during a Remote Deposition:

    A.    The Trustee may choose to mail physical copies of documents that may be used during a Remote Deposition to an Examinee, or, if applicable, an Examinee's counsel, and the Court Reporter. In that event, the Trustee shall so inform the Examinee, or, if applicable, an Examinee's counsel, and the Court Reporter prior to mailing the documents and shall provide tracking information for the package. Such documents shall be delivered by 12:00 p.m. (prevailing Eastern Time) the business day before a Remote Deposition. The Examinee, or, if applicable, counsel for an Examinee, and the Court Reporter shall confirm receipt of the package by electronic mail to the Trustee. If physical copies are mailed, every recipient of a mailed package shall keep the package sealed until said Remote Deposition begins and shall only unseal the package on the record, on video (or audio), and during the Remote Deposition when directed to do so by the Trustee. This same procedure shall apply to any physical copies of documents any other counsel intends to use during a Remote Deposition, as well as if and/or when the Trustee is deposing a third-party witness.

    B.    The Trustee may choose to send a compressed .zip file of the documents that may be used during a Remote Deposition via electronic mail to an Examinee, or, if applicable, the Examinee's counsel, and the Court Reporter. The .zip file shall be delivered by 12:00 p.m. (prevailing Eastern Time) the business day before said Remote Deposition. The Examinee, or, if applicable, an Examinee's counsel, and the Court Reporter shall confirm receipt of the .zip file by electronic mail to the Trustee. The .zip file shall be password protected, and the Trustee shall supply the password via electronic email immediately prior to the commencement of said Remote Deposition. Every recipient of a .zip file shall not open the .zip file until said Remote Deposition begins and when directed to do so by the Trustee. If sending documents by electronic mail, the Trustee, and all other parties involved in a Remote Deposition, will be mindful of file size limitations, which presumptively should be less than 50 MB.

    C.    The Trustee may introduce exhibits electronically during a Remote Deposition, by using the Court Reporters document-sharing technology (if available), by using the scree-sharing technology within the videoconferencing platform, or by sending the exhibit to an Examinee and all individuals on the record via electronic mail during the course of said Remote Deposition.

xvi. To the extent an Examinee receives documents prior to or during a Remote Deposition, pursuant to paragraph xv above, the Examinee shall either return the documents to the Trustee within two business days following the completion of said Remote Deposition (to the extent an Examinee

Exhibit C-3

    received physical copies), and shall not retain the documents in any manner (whether received in physical form or electronically). If the Trustee sends physical copies of documents, the Trustee shall also include a pre-paid return shipping label for an Examinee to use when shipping the documents back following said Remote Deposition.

xvii.  If applicable, counsel for an Examinee may keep any document or exhibit used during the Remote Deposition his or her client was involved in, consistent with any protective order that may be entered in the Chapter 7 case. If applicable, counsel for an Examinee shall return any documents not used during a Remote Deposition to the Trustee, within two business days following the competition of the remote deposition, and shall not retain them in any manner (whether received physically or electronically).

xviii.  To the extent applicable, counsel for a third-party witness involved in a Remote Deposition may keep any document or exhibit used during said Remote Deposition, consistent with any protective order that may be entered in the Chapter 7 case. If applicable, counsel for a third-party witness involved in a Remote Deposition shall return any documents or exhibits not used during said Remote Deposition to the Trustee, within two business days following the competition of the remote deposition, and shall not retain them in any manner (whether received physically or electronically).

Exhibit C-4