**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
Fred Stevens
Stephanie R. Sweeney

*Counsel to Plaintiff Gregory Messer, Chapter 7 Trustee
of the Estate of Jeffrey Winick*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
| | |
|---|---|
| In re : | |
| : | Chapter 7 |
| JEFFREY WINICK, : | |
| : | Case No. 20-11976 (PB) |
| Debtor. : | |

---------------------------------------------------------------x
| | |
|---|---|
| GREGORY M. MESSER, as Chapter 7 Trustee of the : Estate of Jeffrey Winick, : | |
| : | |
| Plaintiff, : | |
| : | Adv. Pro. No. 24-_____ |
| -against- : | |
| : | |
| DAVID BERLEY, : | |
| : | |
| Defendant. : | |

---------------------------------------------------------------x

**COMPLAINT SEEKING THE AVOIDANCE AND RECOVERY OF (I)
FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 544(a), 548(a)(1)(A)
AND (B), AND 550 AND N.Y. DCL §§ 273, 274, 275, 276 AND 276-a AND (II)
<u>PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547</u>**

Gregory M. Messer, the Chapter 7 Trustee (the "<u>Trustee</u>" or "<u>Plaintiff</u>") of the estate of Jeffrey Winick ("<u>Winick</u>" or the "<u>Debtor</u>"), by and through his counsel, Klestadt Winters Jureller Southard & Stevens, LLP, as and for his complaint (the "<u>Complaint</u>") herein against David Berley ("<u>Berley</u>" or "<u>Defendant</u>"), upon information and belief, alleges as follows:

# PRELIMINARY STATEMENT

The Debtor formed SDSDR111 LLC ("SDSDR") in or around 2006 in order to acquire and hold a certain commercial condominium at 545 West 111th Street, New York, NY 10025 (the "Property"). From inception until in or around July 24, 2020, the Debtor was the owner of a 24 to 25% membership interest in SDSDR (the "SDSDR Interest").

In or around January 30, 2015, the Debtor granted Defendant – a close family friend of the Debtor's – a collateral interest in the SDSDR Interest as security for a loan Defendant made to the Debtor in the original principal amount of $500,000 (the "Loan"). At the time that the Debtor granted the collateral interest, the Debtor had amassed unpaid tax obligations to the IRS for tax years 2012, 2013 and 2014 in the total amount of over $5.5 million, and the IRS had already filed a public notice of tax lien in the amount of $2,381,065.14. On July 24, 2020, just thirty-four (34) days before filing his bankruptcy petition, the Debtor surrendered the SDSDR Interest to the Defendant "in full satisfaction" of the Loan, which had by then been purportedly increased to the stated principal amount of $1,658,693.70.

By this Complaint, the Trustee is seeking the avoidance of the pledge and subsequent surrender of the SDSDR Interest as constructively and/or actually fraudulent transfers or preferential transfers, and the recovery of the SDSDR Interest or the value thereof for the benefit of the Debtor's estate and creditors, particularly the IRS, which held a prior lien on the interest at the time of transfer.

As set forth in further detail below, as the Debtor's tax liabilities mounted, he methodically abandoned the SDSDR Interest to the Defendant by taking a friendly personal loan, amending SDSDR's governing documents to permit the transfer of the interest in satisfaction of

his personal debts, and finally notifying the Defendant of the voluntary surrender of the interest to Defendant in satisfaction of the Loan just weeks before filing for bankruptcy.

However, even if the Loan was obtained in good faith and the value of the SDSDR Interest was reasonably equivalent to the Debtor's debt obligation to Defendant, the surrender of the SDSDR Interest during the 90 days prior to bankruptcy was a preferential transfer to the extent it allowed Defendant to receive more than he would have had the transfer not been made, as the IRS's senior secured claims of up to $2,381,065.14 would have been first in line. Therefore, the Trustee is seeking the avoidance of the surrender of the SDSDR Interest to Defendant as a preferential transfer and recovery of such interest or the value thereof at the time of the transfer in an amount of up to $2,381,065.14.

## INTRODUCTION

1. On August 27, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2. On August 27, 2020, Gregory Messer was appointed as the Chapter 7 Trustee, has duly qualified and is the permanent Chapter 7 Trustee of the Debtor's estate.

## BASIS FOR RELIEF

3. This adversary proceeding is brought pursuant to 11 U.S.C. §§ 544, 547, 548 and 550 and Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and §§ 273, 274, 275 and 276 of the New York Debtor and Creditor Law ("NYDCL").

## JURISDICTION

4. This adversary proceeding relates to the above-captioned bankruptcy case of *In re*

*Jeffrey Winick,* Case No. 20-11976 (Bankr. S.D.N.Y. Aug. 27, 2020) (the "Bankruptcy Case") pending under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court before the Honorable Philip Bentley, United States Bankruptcy Judge.

5. The Bankruptcy Court has jurisdiction over this adversary proceeding by virtue of 28 U.S.C. §§ 157(a) and (b), and 1334(b), and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York (Preska, C.J.), dated January 31, 2012. This Court has jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367.

6. Plaintiff consents to the entry of final orders or judgments by the Bankruptcy Court with respect to all matters and claims raised by this Complaint.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a) because this proceeding arises in a case under the Bankruptcy Code pending in this district.

**PARTIES**

8. Gregory M. Messer is a member of the panel of private Chapter 7 trustees established by the United States Trustee pursuant to 28 U.S.C. § 586(a)(1). The Trustee is the permanent Chapter 7 trustee of Jeffrey Winick's bankruptcy estate and is empowered to bring this action. The Trustee maintains an address for the conduct of business at 26 Court Street, Brooklyn, New York 11242.

9. The Debtor is an individual with a current address at 420 East 54th Street, New York, NY 10002.

10. David Berley is an individual with an address at 93 Oliver Road, Bedford, NY 10506. David Berley maintains a place of business at 419 Park Avenue South, 15th Floor, New York, NY 10016.

11. SDSDR111 LLC is a limited liability company formed in or around June 14, 2006 and existing under the laws of the state of Delaware and registered as a foreign entity in the State of New York. SDSDR's registered office within the State of New York is National Registered Agents, Inc., 28 Liberty Street, 42nd Floor, New York, NY 10005. SDSDR maintains offices at 292 Madison Avenue, 24th Floor, New York, NY 10017.

## FACTS COMMON TO ALL CAUSES OF ACTION

I. **SDSDR Was Formed to Hold Property Valued at Over $15.6 Million**

12. On or around June 14, 2006, SDSDR was formed as a limited liability company under Delaware law and registered as a foreign entity in the state of New York for the purpose of acquiring and holding the Property.

13. On or around June 29, 2006, the Debtor, SDS Investments, LLC ("SDS") and Joseph K. Winrich ("Winrich") entered into an Amended and Restated Limited Liability Company Operating Agreement dated as of June 29, 2006 (the "Operating Agreement"), pursuant to which SDSDR was owned 25% by the Debtor and 75% by SDS and Winrich would serve as the independent manager of SDSDR and the Property.

14. Also on June 29, 2006, a deed was executed transferring the Property from 545 West Company to SDSDR for stated consideration of $15,655,555. The acquisition of the Property was funded in part by a loan from Wachovia Bank, N.A., n/k/a Wells Fargo.

II. **The Debtor Prepared to Transfer His Interest in SDSDR to the Defendant as His Tax Liabilities Grew**

15. For the annual tax periods ending December 31, 2012, 2013 and 2014, the Debtor amassed significant income tax obligations to the IRS, which remain outstanding today as follows:

| Tax Period Ending | Date Tax Assessed | Tax Due | Penalty to the Petition Date | Interest to the Petition Date | Total Obligation |
|---|---|---|---|---|---|
| 12/31/2012 | 11/18/2013 | $356,509.00 | $627,999.45 | $436,044.74 | $1,420,553.19 |
| 12/31/2013 | 11/24/2014 | $1,386,429.00 | $416,699.65 | $413,433.23 | $2,216,561.88 |
| 12/31/2014 | 09/28/2015 | $1,824,015.00 | $548,181.72 | $473,941.12 | $2,846,137.84 |
| | **TOTALS:** | **$3,566,953.00** | **$1,592,880.82** | **$1,323,419.09** | **$6,483,252.91** |

See IRS Proof of Claim, dated Nov. 6, 2020, Claim No. 2-1.

16. On May 19, 2014, the IRS filed a Notice of Federal Tax Lien against the Debtor with respect to the 2012 tax year in New York County asserting an unpaid balance of assessment in the amount of $2,381,065.14 (the "2014 Tax Lien Notice"). The notice was filed publicly and has at all times been available for free via the internet on New York City's ACRIS system among other places.

17. On or around December 19, 2014, Winick, SDS and Victor A. Duva ("Duva")[1] executed Amendment No. 1 to the Operating Agreement[2] pursuant to which Winick was permitted to pledge the SDSDR Interest as follows:

> [The Debtor] may pledge and grant security interests in all or any portion of [the SDSDR Interest] to secure any indebtedness of [the Debtor] or any Winick Entity in an aggregate original principal amount not to exceed $2.5 million, without consent of the Managing Member or SDS Investments. Upon declaration of an event of default by the secured party to which any [SDSDR Interest] ha[s] been pledged and exercise by such secured party of its right to foreclose on such [SDSDR Interest], notwithstanding any other provision of this Agreement, including Sections 9.03 and 9.07, the transferee of such [SDSDR Interest] shall be automatically admitted to the Company as a Member and shall automatically succeed to the foreclosed [SDSDR Interest], and if all of [the Debtor]'s [SDSDR Interest] were foreclosed, [the Debtor] shall immediately thereafter cease to be a Member, without the necessity of compliance with any other procedure.

18. On or around January 29, 2015, the Debtor issued a Secured Promissory Note to the Defendant evidencing an indebtedness of $500,000, with interest at 6% per annum, or 10%

---

[1] Upon information and believe, at some point between 2006 and 2014, Duva replaced Winrich as the independent manager of SDSDR.

[2] This amendment references an amended operating agreement dated June 29, 2009. It is unclear if this is a typographical error and is intended to reference the June 29, 2006 Operating Agreement or if there was a prior amendment of which the Trustee is unaware.

6

upon notice in the event of a default, with an original outside maturity date of November 30, 2015, which was later extended to an outside date of January 4, 2021[3] (as extended, amended and restated, and otherwise modified from time to time, the "Note"). Pursuant to the January 29, 2015 Note, the Debtor granted the SDSDR Interest as collateral for the Loan (the "Pledge").

19. On or around January 30, 2015, the Defendant filed a financing statement under the UCC with the New York State Department of State perfecting the Pledge of the security interest in the SDSDR Interest.

20. On August 13, 2015, the IRS filed a Notice of Federal Tax Lien against the Debtor with respect to the 2013 tax year in New York County asserting an unpaid balance of assessment in the amount of $1,491,313.31. The notice was filed publicly and has at all times been available for free via the internet on New York City's ACRIS system among other places.

21. On October 20, 2015, the IRS filed a Notice of Federal Tax Lien against the Debtor with respect to the 2014 tax year in New York County asserting an unpaid balance of assessment in the amount of $1,935,993.37. The notice was filed publicly and has at all times been available for free via the internet on New York City's ACRIS system among other places.

22. On or about August 3, 2016, after the IRS had filed notices of federal tax liens for the 2012, 2013 and 2014 years totaling $5,808,374, the Note was amended and restated in the increased principal amount from $500,000 to $1,500,000.

---

[3] The maturity date of the Note was extended pursuant to various Modification and Extension Agreements and, ultimately, pursuant to the Second Amended and Restated Secured Promissory Note, dated November 1, 2019, to "the earlier to occur of (x) January 4, 2021, (y) the date the Borrower receives his pro rata share of the proceeds from the sale of the Property…and (z) the date Borrower receives his pro rata share of the proceeds from the sale of Winick Realty….".

23. In or around August 2016, the Operating Agreement was further amended to reflect the replacement of SDS with SDS Investments II LLC ("SDS II"), and the recasting of SDSDR equity as follows: 24% the Debtor; 75% SDS II; and 1% S. Lawrence Davis ("Davis").

24. On November 27, 2018, the IRS filed a Notice of Federal Tax Lien against the Debtor with respect to the 2015 and 2016 tax years in New York County asserting an unpaid balance of assessment in the amount of $1,530,976.76. The notice was filed publicly and has at all times been available for free via the internet on New York City's ACRIS system among other places.

25. On December 4, 2018, Louis Eisinger, Chief Operating Office of Winick Realty Group LLC, sent an email to the Defendant requesting his consent to amend the Operating Agreement pursuant to the terms of the Note because SDSDR was "working on a refinance and part of the refinance requires that the operating agreement is modified for this particular loan." The Defendant gave his consent. On or around December 10, 2018, the Operating Agreement was amended again to, among other things, replace Duva with Ricardo Beausoleil as the independent manager of SDSDR. Another amendment to the Operating Agreement was made and approved by the Defendant in October 2019.

26. On or about November 1, 2019, the Note was again amended and restated in the increased amount of $1,627,500, adding to the outstanding principal balance of the first amended Note accrued and unpaid interest and legal fees.

27. A review of the Debtor's bank statements from January 1, 2017 forward revealed that the Debtor made payments to the Defendant in the total amount of $557,091.02 for the three-year period of February 3, 2017 to March 3, 2020.

28. By letter dated July 9, 2020, the Defendant notified the Debtor of an Event of Default under the Note for failure to pay quarterly interest as of May 1, 2020 and demanded payment of all amounts due under the Note.

**III.**     **The Debtor Voluntarily Surrendered the SDSDR Interest to the Defendant Immediately Prior to Bankruptcy Notwithstanding Noticed Tax Liens**

29. On July 24, 2020, 34 days before the Petition Date, the Debtor executed a letter pursuant to which he surrendered and transferred the SDSDR Interest to the Defendant in "full satisfaction" of his obligations to the Defendant under the Note (the "Surrender" and, together with the Pledge, the "Transfers"). The letter stated that the then-obligations to the Defendant under the Note, as amended, totaled $1,658,693.70, representing principal of $1,627,500.00 plus interest through July 9, 2020 of $24,412.50 plus default interest of $6,781.20.

30. On the Petition Date, the Debtor filed his statement of financial affairs stating that the SDSDR Interest was "attached, seized, or levied" within the year prior to the Petition Date by the Defendant and that the value of the SDSDR Interest was $1,500,000.

**AS AND FOR A FIRST CAUSE OF ACTION**
**Avoidance and Recovery of Preferential Transfer**
**(Surrender)**
**11 U.S.C. §§ 547(b) and 550**

31. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 30 of the Complaint as if fully set forth at length herein.

32. The SDSDR Interest was property of the Debtor as of the Petition Date.

33. The Debtor surrendered the SDSDR Interest to the Defendant on July 24, 2020.

34. The Surrender of the SDSDR Interest to the Defendant constituted a "transfer" within the meaning of section 101(54) of the Bankruptcy Code.

35. The Surrender of the SDSDR Interest was to or for the benefit of the Defendant.

36. The Surrender occurred within ninety (90) days of the Petition Date.

37. Defendant was a creditor of the Debtor at the time of the Surrender.

38. The Surrender was for or on account of an antecedent debt owed by the Debtor to Defendant.

39. The Surrender occurred while the Debtor was insolvent. In accordance with Section 547(f) of the Bankruptcy Code, the Debtor is presumed to have been insolvent during the ninety (90) days preceding the Petition Date.

40. The Surrender of the SDSDR Interest enabled Defendant to receive more than Defendant would have received if (A) the Bankruptcy Case were a case under chapter 7 of the Bankruptcy Code; (B) the Surrender had not occurred; and (C) the Defendant received payment of the debt to the extent provided by the provisions of the Bankruptcy Code.

41. Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant avoiding the Surrender of the SDSDR Interest in the amount of the value of the SDSDR Interest, up to the amount of the IRS's prior secured claim pursuant to the 2014 Tax Lien Notice, and directing the Defendant to return the SDSR Interest or such value to the Trustee, together with prejudgment interest and attorneys' fees.

**AS AND FOR A SECOND CAUSE OF ACTION**

**Avoidance and Recovery of Actual Fraudulent Transfer**

**(Surrender – UVTA and Bankruptcy Code)[4]**
**(Pledge – UFCA)**

**11 U.S.C. §§ 544(a), 548(a)(1)(A) and 550;**
**NY DCL § 273(a)(1) (NY UVTA); NY DCL § 276 (NY UFCA)**

42. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 41 of this Complaint as if fully set forth at length herein.

43. The SDSDR Interest was property of the Debtor as of the Petition Date.

44. Each of the Transfers constituted a "transfer" within the meaning of section 101(54) of the Bankruptcy Code.

45. The Transfers were to or for the benefit of the Defendant.

46. The Debtor was insolvent or had unreasonably small capital at the time of the Transfers.

47. Each of the Transfers was made while the Debtor and Defendant were aware of the Debtor's substantial tax liabilities, including pursuant to the publicly filed 2014 Tax Lien Notice.

48. Each of the Transfers was made by the Debtor and received by the Defendant with actual intent to hinder, delay, and/or defraud the Debtor's existing and future creditors, including the IRS.

49. On the Petition Date, the Debtor stated on his statement of financial affairs that the value of the SDSDR Interest was $1,500,000.00.

---

[4] In New York, the Uniform Voidable Transactions Act ("NY UVTA") replaced the prior Uniform Fraudulent Conveyance Act ("NY UFCA") in Article 10 §§ 270-281 of the NY DCL on April 4, 2020. The NY UVTA applies to transactions occurring on or after April 4, 2020. Here, the Pledge, which occurred in 2015, will be governed by the NY UFCA, and the Surrender, which occurred on July 27, 2020, will be governed by the NY UVTA (and the Bankruptcy Code).

50. Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant avoiding the Transfers and directing the Defendant to return the SDSR Interest or the value thereof to the Trustee, in an amount to be determined at trial of not less than $1,500,000.00, together with prejudgment interest and attorneys' fees.

### AS AND FOR A THIRD CAUSE OF ACTION
**Avoidance and Recovery of Constructive Fraudulent Transfers**
**(Surrender – UVTA and Bankruptcy Code)**
**(Pledge – UFCA)**
**11 U.S.C. §§ 544(a), 548(a)(1)(B) and 550;**
**NY DCL §§ 273, 274 and 275 (UFCA); NY DCL §§ 273(a)(2) and 274(a) (NY UVTA)**

51. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 50 of this Complaint as if fully set forth at length herein.

52. The SDSDR Interest was property of the Debtor as of the Petition Date.

53. Each of the Transfers constituted a "transfer" within the meaning of section 101(54) of the Bankruptcy Code.

54. The Transfers were to or for the benefit of the Defendant.

55. The Debtor received less than reasonably equivalent value or fair consideration in exchange for making each of the Transfers.

56. At the time that each of the Transfers was made, the Debtor was (i) insolvent or became insolvent as a result of each of the Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was unreasonably small capital; and/or (iii) intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

57. On the Petition Date, the Debtor stated on his statement of financial affairs that the value of the SDSDR Interest was $1,500,000.00.

58. Based upon the foregoing, the Trustee is entitled to an order and judgment against Defendant avoiding the Transfers and directing the Defendant to return the SDSR Interest or the value thereof to the Trustee, in an amount to be determined at trial of not less than $1,500,000.00, together with prejudgment interest and attorneys' fees.

### AS AND FOR A FOURTH CAUSE OF ACTION

**Attorneys' Fees for Avoidance of Actual Fraudulent Conveyance Under NY UFCA and Avoidance of Actual and Constructive Fraudulent Transfer Under NY UVTA**
**(Surrender – UVTA)**
**(Pledge – UFCA)**
**11 U.S.C. § 544(a); NY DCL § 276-a (NY UFCA and NY UVTA)**

59. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 58 of this Complaint as if fully set forth at length herein.

60. Each of the Transfers was made by the Debtor and received by Defendant with actual intent to hinder, delay or defraud existing or future creditors of the Debtor, including the IRS.

61. Each of the Transfers was made by the Debtor to Defendant for less than reasonably equivalent value or fair consideration.

62. Based upon the foregoing, the Trustee is entitled to a judgment against the Defendant for the full amount of the reasonable attorneys' fees incurred by the Trustee in connection with obtaining the orders and judgments avoiding and recovering the Transfers at issue.

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

a) On the First Cause of Action for avoidance of the Surrender as a preferential transfer, judgment against Defendant avoiding the Surrender and directing the Defendant to return the SDSDR Interest or the value thereof in an amount of up to $2,381,065.14, together with prejudgment interest and attorneys' fees;

b) On the Second Cause of Action for avoidance of the Transfers as actual fraudulent transfers, judgment against Defendant avoiding the Transfers and directing the Defendant to return the SDSDR Interest or the value thereof in an amount of at least $1,500,000.00, together with prejudgment interest and attorneys' fees;

c) On the Third Cause of Action for avoidance of the Transfers as constructive fraudulent transfers, judgment against Defendant avoiding the Transfers and directing the Defendant to return the SDSDR Interest or the value thereof in an amount of at least $1,500,000.00, together with prejudgment interest and attorneys' fees;

d) On the Fourth Cause of Action for recovery of attorneys' fees, judgment against Defendant awarding the full amount of reasonable attorneys' fees incurred by the Trustee; and

e) Granting the Trustee such other and further relief as this Court deems just and proper.

Dated: New York, New York
April 30, 2024

         **KLESTADT WINTERS JURELLER**
         **SOUTHARD & STEVENS, LLP**

By: */s/ Fred Stevens*
    Fred Stevens
    Stephanie R. Sweeney
    200 West 41st Street, 17th Floor
    New York, New York 10036
    Tel: (212) 972-3000
    Fax: (212) 972-2245
    Email: fstevens@klestadt.com
           ssweeney@klestadt.com

*Counsel to Plaintiff Gregory M. Messer, as Chapter 7 Trustee of the Estate of Jeffrey Winick*